## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **TOREY DEVOL MILLER,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:24-CV-00425-RP** |
| **THOMAS OILFIELD SERVICES, LLC,** | § | |
| *Defendant* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Thomas Oilfield Services, LLC's Opposed Motion to Transfer Venue to the Midland Division of the Western District of Texas, filed May 27, 2024 (Dkt. 8); Plaintiff Torey DeVol Miller's Response, filed June 10, 2024 (Dkt. 9); and Defendant's Reply, filed June 17, 2024 (Dkt. 10). By Text Order issued June 18, 2024, the District Court referred the motion and related filings to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.    Background

Plaintiff Torey DeVol Miller, a resident of Dallas County, Texas, brings this employment discrimination suit against his former employer, Defendant Thomas Oilfield Services, LLC ("Thomas"), a Texas oilfield rental service company. Miller alleges that he was terminated because of his race (Black), his disability (diabetes), and his age (51). Thomas, which is headquartered in Longview, Texas, operates a service facility in Midland, Texas ("Midland Facility"). Complaint, Dkt. 1 ¶ 3. Thomas also has an "Accounting and HR Office" in Cedar Park, Texas. *Id.* ¶ 10.

1

Miller began working for Thomas as a "Field Technician" out of its Midland Facility in February 2002. *Id.* ¶ 12. On April 2, 2023, Miller and two co-workers, Randy Silva and "Andrew," were finishing work on oil rigs "in remote areas about an hour or more away from Pecos, Texas." Dkt. 1 ¶ 34. Miller alleges that around 8:15 p.m. he told Silva to help clean up the work site, but Silva became distracted with the oil tanks located near the rigs. Miller alleges that he told Silva to "leave the tanks alone" and grab the equipment "so we can go." *Id.* ¶ 45. Miller alleges that Silva then screamed at him and "pushed Miller aggressively." *Id.* ¶ 55. Miller alleges that he "was left with no choice but to defend himself from Silva's aggression" and that he and Silver "fell to the ground tussling." *Id.* ¶¶ 56-57. Miller contends that "Silva reached for a pole lying on the ground to hit Miller with it," but "Miller put Silva in a headlock before Silva could strike him with a pole," causing Silva to pass out. *Id.* ¶¶ 60-62. Miller contends that he then "poured water onto Silva trying to revive him." *Id.* ¶ 65. After Silva woke up, Miller called his supervisor Casey Barrier,[1] who told Miller to take Silva to the nearest hospital, Reeves County Hospital ER in Pecos. *Id.* ¶ 67; Barrier Decl., Dkt. 8-1 at 3. Silva received follow-up treatment in Midland. Dkt. 8 at 2.

Miller alleges that on April 10, 2023, Thomas's Human Resources Manager, Krista Vera,[2] and Director of Operations, Hank Guillotte, called him and told him that he was fired, effective immediately. Dkt. 1 ¶ 73. Miller complains that the decision to fire him was "harsher than what the Company has done to other similarly situated employees." *Id.* ¶ 76.

On April 22, 2024, Miller filed this suit in the Austin Division, alleging that he was terminated because of his race, age, and disability, in violation of 42 U.S.C. § 1981 of the Civil Rights Act, Title VII of the Civil Rights Act, Title I of the Americans with Disabilities Act, and the Age

---

[1] Barrier lives in Midland and works at the Midland Facility. Barrier Decl., Dkt. 8-1 at 2.

[2] Thomas admits that Vera was working from its Cedar Park Office when she made the call. Defendant's Original Answer, Dkt. 6 ¶ 10.

Discrimination in Employment Act. Dkt. 1. Thomas generally denies Miller's allegations and contends that Miller was fired because he assaulted Silva by beating him unconscious. Dkt. 8 at 1. Thomas now moves to transfer venue to the Midland Division of the Western District of Texas for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). *Id.* Miller opposes the motion.

## II.    Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A party seeking a transfer under Section 1404(a) "must show good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id.*

> When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.

*Id.*; *see also In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("[T]o establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.").

The transfer analysis proceeds in two parts. First, the court asks whether the case "might have been brought" in the destination venue. 28 U.S.C. § 1404(a). If the answer is yes, then the court

3

must consider the following factors to determine whether the movant has shown good cause for the transfer—that the destination venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (citations omitted). The Fifth Circuit has cautioned that these factors "are not necessarily exhaustive or exclusive" and "none . . . can be said to be of dispositive weight." *Id.* Moreover, "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Bruck*, 30 F.4th at 434.

### III.    Analysis

The parties do not dispute that this action "might have been brought" in the Midland Division of the Western District of Texas under 28 U.S.C. § 1391(b). The Court agrees.

Having crossed that initial threshold, the Court assesses the relevant factors to determine whether Thomas has met its burden to demonstrate that the Midland Division is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

### A.  Private Interest Factors

#### 1.  Relative Ease of Access to Sources of Proof

The first private interest factor focuses on the location of documents and physical evidence relating to the case. *Volkswagen II*, 545 F.3d at 316. "[T]his factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352,

358 (5th Cir. 2023). "But when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Id.* (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)).

Thomas argues that this factor "slightly favors transfer because non-party medical records exist in the Midland Division," where Silva received follow-up medical treatment. But Thomas also admits that it has already "received copies of Mr. Silva's medical records from Xstreme, MD." Barrier Decl., Dkt. 8-1 at 3. That the records were originally located in Midland appears to be a non-issue.

Thomas also emphasizes that, because "[t]he documents and proof related to Plaintiff's assault and termination in Thomas's possession are electronically stored on servers in Longview, Texas— outside either Austin or Midland—and in the 'cloud,'" the first factor "weighs slightly in favor of transfer." Dkt. 8 at 9. Thomas fails to explain how documents in the Eastern Division of Texas and others available on the cloud favor transfer to the Midland Division. Nor does Thomas acknowledge that medical records from Silva's treatment at the hospital in Pecos that have not already been produced would be in the Pecos Division. In addition, Thomas's HR office, which presumably would have some relevant records related to Miller's termination, is in the Austin Division.

Based on these facts, Thomas does not show that the first private interest factor favors transfer to the Midland Division.

### 2. Availability of Compulsory Process

The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen II*, 545 F.3d at 315. "This factor favors transfer where non-party witnesses are outside the District's subpoena power and a proper venue that does enjoy absolute

subpoena power for both depositions and trial is available." *TikTok*, 85 F.4th at 360 (cleaned up). District courts have the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A).

Thomas identifies the following non-party witnesses who may be called to testify at trial: (1) Jerry Potter, a former employee who lives in Odessa; (2) Samuel Taylor, a former employee who lives in Midland; (3) Shellie Hargrave, LPN, a nurse who treated Silva in Pecos; and (4) Dr. Jayson Eversgerd, MD, a physician who treated Silva in Midland. Thomas emphasizes that the Midland Division has subpoena power over these witnesses but the Austin Division does not.

Miller responds that "Vera's testimony is far more important than any of the other witnesses cited by Thomas in the Motion," and she lives outside the Midland Division's subpoena power. Dkt. 9 at 9. Miller argues that Vera is the "preeminent witness" because "it is likely Vera made the final, ultimate decision to fire Miller, or at a minimum participated in the Company's decision to fire Miller." *Id.* Miller identifies Vera as a non-party witness, but it is unclear whether she is unwilling to testify.

Miller identifies one non-party witness who may be unwilling to testify, but most of the non-party witnesses identified are within the subpoena power of the Midland Division. Accordingly, this factor favors transfer.

### 3. Costs of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. *Volkswagen II*, 545 F.3d at 317. "Testifying imposes myriad external costs on witnesses," and the third factor "attempts to internalize and minimize those costs by favoring the venue that is more convenient from the perspective of willing witnesses." *Clarke*, 94 F.4th at 514. Courts in the

6

Fifth Circuit "assesses convenience as a function of distance." *Id.* If the transferee venue is more than one hundred miles from the transferor, "the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* All potential material and relevant witnesses must be considered. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009).

Thomas has identified five employees who live in Midland and likely will be called as witnesses. Dkt. 8 at 6-7. Thomas also identifies former employee Silva as a willing witness who now lives in Albuquerque, New Mexico, which is 400 miles from the Midland Division and 700 miles from the Austin Division. *Id.* at 7. Miller has not identified any willing witnesses who live in the Ausin Division. This factor favors transfer.

### 4.  All Other Practical Problems

The fourth private interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. Thomas argues that because this case "is in its infancy" and the parties have yet to hold a scheduling conference or engage in discovery, "there are no practical barriers to transferring this case to the Midland Division." Dkt. 8 at 9.

Miller does not contend that any practical problems exist, but argues that the Court should consider Miller's choice of forum under this factor and points out that he lives closer to the Austin Division's Courthouse (189 miles) than to the Midland Division's Courthouse (327 miles). Dkt. 9 at 10. But the plaintiff's choice of forum is not a separate factor to consider under the § 1404(a) analysis. *See Volkswagen II*, 545 F.3d 304, 315 n.10 ("A plaintiff's choice of forum, however, is not an independent factor within the *forum non conveniens* or the § 1404(a) analysis."). The final private interest factor is neutral.

### B.  Public Interest Factors

#### 1.  Administrative Difficulties Flowing from Court Congestion

The first public interest factor looks to "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. "This factor concerns whether there is an appreciable difference in docket congestion between the two forums." *Universal Connectivity Techs. Inc. v. HP Inc.*, No. 1:23-CV-1177-RP, 2024 WL 3305724, at *6 (W.D. Tex. July 3, 2024) (citation omitted). While the Fifth Circuit has stated that this factor can be "speculative," it acknowledges that, "to the extent docket efficiency can be reliably estimated, the district court is better placed to do so than this court." *Planned Parenthood*, 52 F.4th at 631.

According to the Western District of Texas 2023 Calendar Year Statistical Report, 1,496 civil cases were filed in the Austin Division and 214 civil cases were filed in the Midland Division last year.[3] Each division has one active district judge. While "a § 1404(a) transfer cannot be granted solely because of court congestion," *Clarke*, 94 F.4th at 515, this factor favors transfer.

#### 2.  Local Interest in Having Localized Interests Decided at Home

The local interest inquiry does not look to the parties' connections to each forum, "'but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *Id.* at 511 (quoting *TikTok*, 85 F.4th at 364). The local interest inquiry "is concerned with the interest of *non-party citizens* in adjudicating the case. Considerations such as the location of the injury, witnesses and the plaintiff's residence are useful proxies for determining what local interests exist in each venue." *Id.* (cleaned up). Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty. Jury duty is

---

[3] https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2023/Calendar%20Year%20Statistics%202023.pdf.

a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Chamber of Com.*, 105 F.4th at 308 (citations omitted).

Thomas argues that the Midland Division has the strongest interest in this case because it operates its facility in Midland, Miller and his co-workers worked out of that facility, and Midland doctors treated Silva in Midland after he was released from the hospital. This Division clearly has connections to this case: Miller emphasizes that Thomas maintains an HR and Accounting Office in the Austin Division, and Vera called Miller on April 10, 2023 from her office there to terminate him. But most of the events giving rise to this suit occurred outside the Austin Division. As stated, Miller worked at the Thomas facility in Midland. Thomas alleges that it fired Miller because he assaulted Silva while working on the oil rigs outside of Pecos, in the Pecos Division. Miller alleges that Thomas fired him for discriminatory reasons and treated its non-Black, non-disabled, and younger employees at the facility better than him. Miller lives in Dallas County, and none of the witnesses other than Vera lives in Austin. Based on these facts, the Court finds that Midland has a greater interest in this case than Austin.

### 3.  Other Factors

The parties agree that the remaining public interest factors are inapplicable and therefore neutral. The Court agrees that the third and fourth public interest factors are neutral. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

### C.  Conclusion

Because the majority of the private and public interest factors favor transfer and the only real connection to this Division is the location of one witness, the Court finds that Thomas has shown good cause to transfer this case to the Midland Division of the Western District of Texas. *Bruck*, 30 F.4th at 433.

## IV.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Thomas Oilfield Services, LLC's Opposed Motion to Transfer Venue (Dkt. 8) and **TRANSFER** this case to the Midland Division of the Western District of Texas.

**IT ISORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 22, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

10