IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| TORY DEVOL MILLER,<br>   *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 7:24-cv-00199-DC-RCG |
| THOMAS OILFIELD SERVICES, LLC,<br>   *Defendant*. | §<br>§<br>§<br>§ | |

**PLAINTIFF MILLER'S RESPONSE IN OPPOSITION TO
DEFENDANT THOMAS OILFIELD SERVICES, LLC'S MOTION FOR
TRADITIONAL AND NO EVIDENCE SUMMARY JUDGMENT**

Plaintiff Torey DeVol Miller ("Miller") opposes the relief requested by Defendant Thomas Oilfield Services, LLC ("Thomas" or "the Company") in the document titled *Defendant Thomas Oilfield Services, LLC's Motion for Traditional and No Evidence Summary Judgment* ("Motion") (ECF No. 22). In support, Miller shows the following.

**I.      Miller Withdraws Counts Three and Four of His Pleading**

In Count Three of his *Complaint* (ECF No. 01) at ¶¶ 95-98, Miller alleges that the Company unlawfully discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. §12112(a)("ADA"). Miller withdraws this claim.

In Count Four of his *Complaint* (ECF No. 01) at ¶¶ 99-105, Miller alleges that the Company unlawfully discriminated against him in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1)("ADEA"). Miller withdraws this claim.

Miller is going forward with his two race claims. They are: Count One -- 42 U.S.C. §1981 of the Civil Rights Act of 1866 ("Section 1981"), and Count Two -- 42 U.S.C. § 2000e-2 of Title

**Plaintiff Miller's Response in Opposition to**        Page 1
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

VII of the Civil Rights Act ("Title VII").

## II.     Summary: This Case Turns on TWO Events

### A.     April 2, 2023: the Fight at a Rig

On this day Miller was assaulted [1] by a coworker.[2] The assailant did this during working hours. The assailant did this while no member of management was present. The assailant threw the first punch. The assailant reached for an item which he "used or exhibited" [3] while assaulting Miller.

Miller repelled the assailant. Miller's response falls well within the law of self-defense.[4] Section 9.31(a) of the Texas Penal Code reads in pertinent part, "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Also, Section 9.31(e) of the Texas Penal Code provides –

> A person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used **is not required to retreat** before using force as described by this section. (Emphasis added).

---

[1] *See* TEX. PEN. CODE § 22.01(a)(1)(defining "assault" – "A person commits an offense if the person … intentionally, knowingly, or recklessly causes bodily injury to another…."). The phrase "bodily injury" is defined in Section 1.07(8)("'Bodily injury' means physical pain, illness, or any impairment of physical condition").

[2] The assailant's name is Mr. Randy Silva.

[3] *See* TEX. PEN. CODE § 22.02(a)(2)(defining "aggravated assault" – "A person commits an offense if the person commits assault as defined in Section 22.01 and the person … **uses or exhibits** a deadly weapon during the commission of the assault")(Emphasis added).

[4] Except for the Rule of Evidence which gives a person accused of a crime the benefit of reasonable doubt, the **law of self-defense is the same in both civil and criminal cases**. *Foster v. H.E. Butt Grocery Co.*, 548 S.W.2d 769, 771 (Tex. Civ. App. – San Antonio 1977, writ ref'd n.r.e.); *Bradford v. Fort Worth Transit Co.*, 450 S.W.2d 919, 922 (Tex. Civ. App. – San Antonio 1970, writ ref'd n.r.e.); and *Roden v. Booth*, 344 S.W.2d 481, 485 (Tex. Civ. App. – Dallas 1961, writ ref'd n.r.e.)(citing cases).

**Plaintiff Miller's Response in Opposition to**                                                                                                        Page 2
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

Notably, "[t]he issue of self-defense … is a fact issue to be determined by the fact finder, who is free to accept or reject the defensive issue." *McDow v. State*, 2019 Tex. App. LEXIS 5296, *12 (Tex. App. – Dallas June 25, 2019, no pet.).

### B.  April 10, 2023: The Company Tells Miller He's Fired (But Not the Assailant)

Miller's race is black. The Company fired him. Assailant's race is not black, and the Company did not fire him. Instead, and as shown in "Miller's Response to the Company's 'Factual Background,'" the Company gave the assailant a "Final Warning" and let him keep his job.

### III.  Miller's Summary Judgment Evidence

Miller incorporates Exhibits 1-12 of the Motion. Additionally, Miller offers, as Exhibit 13, the Declaration of Torey Devol Miller ("Miller Decl."). Exhibit 13 consists of evidence that is either admissible evidence or evidence that is "***capable*** of being presented in a form that would be admissible in evidence." *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017)(citing cases) (bold font and italics in original). Finally, Miller offers, as Exhibit 14, the Declaration of Wade Forsman ("Forsman Decl.").

### IV.  Miller's Response to the Company's "Factual Background"

The Company falls far short of what the Supreme Court calls "fundamental principle[s]" of summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"), *followed in Winkle v. Rogers,* 82 F.4th 370, 381 (5th Cir. 2023).

The Company cherry-picks from the record instead of considering the record as a whole. The Company skews the record in its favor instead of giving all reasonable inferences in favor of

Plaintiff Miller's Response in Opposition to
Defendant Thomas Oilfield Services, LLC's Motion for
Traditional and No Evidence Summary Judgment                                                        Page 3

the non-movant (Miller). On more than one occasion, the Company appears to invite this Court to make "credibility assessments," which are wholly improper, as they are the "exclusive province of the trier of fact." *LaDay v. Catalyst Tech, Inc.,* 302 F.3d 474, 477 (5th Cir. 2002) (quoting *Dibidale, Inc. v. Am. Bank & Trust Co.*, 916 F.2d 300, 307-08(5th Cir. 1990)).

Advocacy is fine, but not when it runs afoul of the foregoing fundamental principles of summary judgment. As shown below, the record contains multiple facts that are both "genuine" and "material." They mandate a jury trial.

### A. Four Facts, All of Them "Genuine" and "Material," That the Parties Dispute

*First,* in the Motion at p. 2, the Company writes, "Plaintiff's understanding was that their task was to load containment walls onto Thomas's trailer." This mischaracterizes the record, which shows that Miller had more than some foggy "understanding."

The evidence shows that as they were driving down a lease road, Messrs. Delgado, Silva and Miller stopped and spoke with a new supervisor. His name was Victor, and he was on the same lease road. Victor and Delgado spoke with each other. The two spoke in Spanish. Problem – Miller doesn't speak Spanish. So, after Victor left and Messrs. Delgado, Silva and Miller resumed their drive to the rig, Delgado told Miller that "we" only need to get the walls. Decl. Miller. (Ex. 13) at ¶¶ 9, 9.A. Said another way, Miller was complying with instructions from a supervisor (Victor), made expressly (in Spanish) shortly before. Miller did not have some foggy "understanding."

*Second*, in the Motion at p. 2, the Company writes the following – "Plaintiff claims that Mr. Silva … said, 'what the f**k is your problem'… However, "Mr. Silva claim[s] that [he] never cursed at Plaintiff[.]" This is a swearing match. A jury should decide whom to believe.

*Third*, in the Motion at p. 2, the Company writes the following – "Plaintiff claims that Mr.

Plaintiff Miller's Response in Opposition to
Defendant Thomas Oilfield Services, LLC's Motion for
Traditional and No Evidence Summary Judgment                                              Page 4

Silva … said, 'what the f**k is your problem' … However, "Mr. Delgado claim[s] that Mr. Silva never cursed at Plaintiff[.]" This is another swearing match, and the jury should decide whom to believe.

*Fourth*, in the Motion at p. 2, the Company writes the following – "Mr. Silva" claims he "only put his arm out defensively, before being tackled by Plaintiff," and Mr. Delgado agrees with Silva's averment. However, Miller controverts it. *See* page 10 of the Motion, where the Company quotes Miller's deposition testimony, where Miller said, 'Randy [Silva] pushed me and **after** he pushed me, I grabbed him and pushed him…' (Emphasis added). Further, in Paragraphs 14 through 17 of his Declaration, attached hereto as Exhibit 13, Miller testified as follows:

- In paragraph 52 of my lawsuit, I said that 'Silva put his hands onto [my] person first.' That is a true statement. If Silva or anyone else says otherwise, they're lying.

- In paragraph 53 of my lawsuit, I said that 'Silva put his hands onto [my] person before [I] touched Silva.' That is a true statement. If Silva or anyone else says otherwise, they're lying.

- In paragraph 54 of my lawsuit, I said that 'Silva pushed [me].' That is a true statement. If Silva or anyone else says otherwise, they're lying.

- In paragraph 55 of my lawsuit, I said that 'Silva pushed [me] aggressively.' That is a true statement. If Silva or anyone else says otherwise, they're lying.

This is yet another swearing match. A jury should decide whom to believe.

### B.   The Company's Cursory Investigation

In the Motion at p. 3, the Company says it "began its investigation…." Apparently, this wasn't much of an "investigation" as it consisted of nothing more than "obtain[ing] statements from [Miller], Mr. Silva, and Mr. Delgado regarding what happened[,]" and having both Miller and Silva take drug tests.

Plaintiff Miller's Response in Opposition to
**Defendant Thomas Oilfield Services, LLC's Motion for
Traditional and No Evidence Summary Judgment**                                     Page 5

The Motion is silent about what else, if anything, management supposedly did. Thus, the Motion fails to state if management investigated whether any of the persons involved – Messrs. Delgado, Silva, or Miller – had been written up during their term of employment at the Company. There is no mention of the results of the drug tests taken by Silva and Miller. Nor is there any hint about management searching for contraband – *e.g.*, illegal narcotics -- in the fleet truck and/or trailer that Messrs. Delgado, Silva, or Miller had been using on April 2, 2023.[5]

Surely, if one is going to make a credibility assessment, as the Company avers it did here, *viz.*, who was "primarily at fault for the fight" (Mot. at p. 10), then an "investigation" that is worthy of the word should entail more than telling the persons involved to write a statement.[6] Even worse is seeing the Company now trying to cover up for its own lack of effort by shifting blame onto the persons involved, as the Company, in the Motion at p. 2, criticizes Miller for not saying anything in his statement about Silva "attempt[ing] to pick up a pole to use in the fight[.]" [7] Instead of criticizing Miller, the Company would do well to hold its management to a higher standard and be more proficient than its Field Technicians in knowing how to conduct a proper investigation.

---

[5] Also, while the Company trumpets the fact that Silva was "hospitalized," the Company fails to state **how long** Silva was hospitalized. All we know from the Motion at p. 3 is that "Mr. Silva was admitted to the Emergency Room upon … arrival." If the Company is going to impose discipline based, in part, on the severity of Silva's injury, as the Company makes clear it did, a little more specificity would be in order.

[6] *See and compare, Trujillo v. PacifiCorp.,* 524 F.3d 1149, 1159 (10th Cir. 2008)(reversing summary judgment, where, among other things, employer failed to interview a witness who had knowledge of what turned out to be important facts).

[7] This seems to be another invitation by the Company for the Court to violate the rules on summary judgments and engage in credibility assessments.

**Plaintiff Miller's Response in Opposition to**                                                                                    **Page 6**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

**V.     Miller Presents a Triable Case of Race Discrimination via Circumstantial Evidence – Specifically, By Using the Three-Step, Burden-Shifting Framework Established in *McDonnell Douglas* v. *Green*, 411 U.S. 792 (1973).**

Direct evidence of discrimination is rare. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)(quoted in *Reeves. v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000)).

In *Barnes v. Yellow Freight Systems, Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985), the Fifth Circuit observed, "Today, employers … who … choose to discriminate … have become … too sophisticated … to leave glaring tracks… Instead, the[ir] motive is veiled behind … neutral remarks about business necessity, an employee's inadequate performance, attitude and the like." In *Thornbrough v. Columbus and Greenville Railroad Co.,* 760 F.2d 633, 638 (5th Cir. 1985), an employment discrimination case based on age, the Fifth Circuit wrote:

> Unless the employer is a latter-day George Washington, employment discrimination is as difficult to prove as who chopped down the cherry tree. Employers are rarely so cooperative as to include a notation in the personnel file, "fired due to age," or to inform a dismissed employee candidly that he is too old for the job.

In *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)(en banc), *cert. denied,* 137 S. Ct. 612 (2017), a case that involved the Voting Rights Act, the Fifth Circuit discussed what it called "discriminatory intent" by making the following analogy to employment discrimination law:

> **[I]n employment discrimination cases, we do not automatically find for an employer who proffers a race-neutral reason for terminating an employee**; instead, the employee can show that this reason is pretextual… **[P]eople hide discriminatory intent behind seemingly legitimate reasons.** If Jane were fired from an at-will job for being late once, we might conclude that firing was legitimate, until we learned that Joe, who has the very same job as Jane, was late numerous times with no penalty. **Context matters**.

**Plaintiff Miller's Response in Opposition to**                                                                                   **Page 7**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

*Id.* at 236 (bold font added). Accordingly, Miller uses the burden-shifting framework established in *McDonnell Douglas* v. *Green*, 411 U.S. 792 (1973).

### VI. Miller Presents a Triable Case of Racial Discrimination

Miller uses the three-step, burden-shifting framework established in *McDonnell Douglas* v. *Green*, 411 U.S. 792 (1973). First, Miller meets his minimal burden of production by establishing a prima facie case. Next, Miller satisfies his burden on pretext.

The combination of a prima facie case and sufficient evidence of pretext allows a jury to find outright liability. *Reeves.,* 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). *A fortiori*, it is more than enough to deny the Motion.

### VII. Miller Establishes a Prima Facie Case

"The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Turner v. Kansas City S. Ry. Co.,* 675 F.3d 887, 892 (5th Cir. 2012)(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 353 (1981)). To establish a *prima facie* case of discrimination, Miller must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007).

Miller satisfies the first three elements of a prima facie case of race discrimination. **Concerning the first prima facie element**, the Company admits that Miller's race is black.

**Plaintiff Miller's Response in Opposition to**     **Page 8**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

*Defendant's Orig. Ans.* (ECF No. 06) at ¶¶ 13, 14. **Concerning the second prima facie element**, Miller proffers competent evidence that demonstrates he was "qualified" for prima facie purposes as the Fifth Circuit defines "qualified" in *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 n. 3 (5th Cir. 1988) ("By [qualified for prima facie purposes] we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired"). *Miller's Decl.* (Ex. 13) at ¶¶ 6-8. **Concerning the third prima facie element**, it is undisputed that a cognizable adverse action occurred as the Company admits it discharged Miller. *Defendant's Orig. Ans.* (ECF No. 06) at ¶¶ 73, 73.A. *See also, Welsh v. Ft. Bend Indep. Sch. Dist.*, 914 F.3d 818, 824 (5th Cir. 2019) ("Adverse employment actions [in discrimination cases] include … discharging….").

The only prima facie element in play, then, is the **fourth (and final) prima facie element**. Miller is unaware as to who replaced him. Even so, Miller may still satisfy this element by showing that the Company treated him **less favorably** than it treated other employees who were **similarly situated** to Miller and yet outside the protected group (*i.e.*, not black).

The Court of Appeals discussed this issue at length in *Turner v. Kansas City Southern Railway Company,* 675 F.3d 887 (5th Cir. 2012).**[8]** The case reads in pertinent part as follows:

> This court has held that "[i]n work-rule violation cases," such as the instant case, "a Title VII plaintiff may establish a prima facie case by showing 'either [1] that he did not violate the rule[,] or [2] that, if he did, white employees who engaged in similar acts were not punished similarly.'" (citations omitted). "To establish a prima facie case in this [second] manner, [the plaintiff] must show that . . . employees [who were not members of the plaintiff's protected class] were treated differently under circumstances 'nearly identical' to his." (citations omitted). "The employment actions being compared will be deemed to have been taken under nearly identical

---

**[8]** This is a **different** case than *Lee v. Kansas City Southern Railway Company,* 574 F.3d 253 (5th Cir. 2009), which the Company cites in the Motion at pp. 9-10.

**Plaintiff Miller's Response in Opposition to**                                                                       **Page 9**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

> circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." (citation omitted). Moreover, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions," because "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." (citation omitted) (internal quotation marks omitted).
>
> However, we have made clear that "nearly identical" is not "synonymous with 'identical.'" (citations omitted). "Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." (citation omitted). "For example . . . [e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." (citation omitted). "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's." (citations omitted). "The relevant perspective is that of the employer at the time of the adverse employment decision." (citations omitted).

675 F.3d at 892-93. A few pages later, the Court had this to say to employers like the Company:

> [The employer] may still argue to the jury that these distinctions between [one employee's] and [another employee's] infractions and employment histories account for the difference in their discipline; however, we cannot say that, viewing the evidence in the light most favorable to the plaintiffs, these distinctions show that the employment actions were not taken under nearly identical circumstances. Therefore, we conclude that the [employees] have met their burden to establish a prima facie case of discrimination with regard to the decision to dismiss [an employee].

*Id.* at 898. Applying the foregoing, the record shows **four fights** between/among employees who, like Miller, worked for the Company as Field Technicians. Miller discusses them in Paragraph 19

**Plaintiff Miller's Response in Opposition to**          **Page 10**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

of his declaration, which is attached hereto as Exhibit 13. It reads as follows:

> A.     *Mauro Perez was a Field Technician like me. He is Hispanic. He had a fight with someone named Jerry Potter. The Company did not fire him. The Company did not suspend him.*
>
> B.     *Javier Rodrigez was a Field Technician like me. He is Hispanic. He beat up Randy Silva. No one got in trouble for that.*
>
> C.     *Andres (Andrew) Delgado was a Field Technician like me. He is Hispanic. He had a fight with the shop manager. It was caught on camera. The Company ended up terminating the shop manager. The Company wanted Delgado to go and take a drug test. Delgado refused. Despite this, the Company told Delgado that if he refused to take a drug test he can resign and reapply for work at the Company in six months.*
>
> D.     *Ozzie Ortega was a Field Technician like me. He is Hispanic. He and Josh Crosby had a fight. Apparently, Josh said something racial and they had a fight. Ozzie got terminated. Then, the Company gave Ozzie his job back.*

Manifestly, none of the four comparators *supra* were treated as harshly as Miller, as none of the four comparators *supra,* like Miller, were fired with no chance of ever coming back. *See and compare* the "Jane" and "Joe" comparison made by the Court of Appeals, cited on page 7 *supra.*

Accordingly, based on the foregoing, Miller has succeeded in making the "very minimal showing" required for establishing a prima facie case. *Thornbrough*, 760 F.2d at 639. *See also Burdine,* 450 U.S. at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous"). As a result, Miller now enjoys, at this stage at least, a "rebuttable presumption" that the Company discriminated against him. *Id.*

### VIII.   The Company Articulates a Legitimate, Nondiscriminatory Reason

The Company must now articulate some "nondiscriminatory reason" for firing Miller.

**Plaintiff Miller's Response in Opposition to**                                                                                                **Page 11**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

*Burdine*, 450 U.S. at 253. The Company's burden at this stage is one of "production, not persuasion; it can involve no credibility assessment." *Reeves,* 530 U.S. at 142. If the Company succeeds in articulating such a reason, "the presumption raised by the prima facie case is rebutted … and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Applying the foregoing, Miller acknowledges that the Motion at pp. 15-16 satisfies the Company's burden of production.

## IX.     Pretext

### A.     Pretext Defined

The ordinary meaning of "pretext" is a reason one gives to hide his/her real reason for doing something. *Pretext, Merriam-Webster Dictionary* (2016); *see also Pretext, Black's Law Dictionary* (7th ed. 1999)("[a] false or weak reason or motive advanced to hide the actual or strong reason or motive"); John Bouvier, *Pretext, A Law Dictionary, Adapted to the Constitution and Laws of the United States* (1856)("[t]he reasons assigned to justify an act, which have only the appearance of truth, and which are without foundation; or which if true are not the true reasons for such act").

Pretext evidence is "not limited to … presenting evidence of a certain type." *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989), *superseded by statute in part on other grounds*, 42 U.S.C. § 1981(b). Rather, pretext evidence "may take a variety of forms." *Id. Accord, Robinson v. Jackson State Univ.,* 714 Fed. Appx. 354, 362 (5th Cir. 2017) (per curiam) (unpublished); *Ellerbrook v. City of Lubbock*, 465 Fed. Appx. 324, 333 (5th Cir. 2012) (per curiam) (unpublished) (emphasizing the variety of ways an employee may show pretext).

"Pretext can be demonstrated by circumstantial evidence." *Coughlin v. Lee*, 946 F.2d 1152,

**Plaintiff Miller's Response in Opposition to**                                                                                                 **Page 12**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

1159 (5th Cir. 1991) *See also generally, Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence").

### B. Substantial Evidence Undermines the Company's Supposed "Legitimate, Nondiscriminatory" Reason for Miller's Termination

It is well-established in this circuit that "**[a] plaintiff may establish pretext … through evidence of disparate treatment**[.]" *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003)(reversing JMOL), *followed by Allen v. U.S. Postal Serv.,* 63 F.4th 292, 301, 304 (5th Cir. 2023)(citing cases)("USPS has failed to demonstrate that there are no genuine issues of material fact. Summary judgment was not appropriate[.]"); *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 527, 529 (5th Cir. 2022)("Gosby has established the elements of her *prima facie* case. She has also presented "substantial evidence" that [the employer's] nondiscriminatory rationale … was pretextual"); *Watkins v. Tregre*, 997 F.3d 275, 283, 286 (5th Cir. 2021)("district court erred in granting summary judgment"). [9]

Here, the summary judgment record contains "substantial" evidence of disparate treatment – namely, the **four fights** described in Miller's Declaration, attached as Exhibit 13, at ¶ 19, which were previously discussed on page 11 *supra*.

---

[9] *See and compare Stennett v. Tupelo Pub. Sch. Dist.,* 619 F3d. Appx. 310, 322 (5th Cir. July 30, 2015) ("In reviewing a grant of summary judgment … we must determine whether a rational jury *could*—not probably would—conclude that the employer's proffered non-discriminatory hiring rationale is pretextual. Here, because the evidence **viewed as a whole** and **in the light most favorable to Stennett** could support a rational inference that TPSD refused to hire her because of her age, the district court erred in granting summary judgment in favor of TPSD on Stennett's ADEA claim. Accordingly, we REVERSE the district court's judgment ….")(italics and capital letters in original)(bold and underline font added).

**Plaintiff Miller's Response in Opposition to** **Page 13**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

## X.     Epilogue

In the Motion at p. 17, the Company closes the section on pretext by writing the following -- "Plaintiff chose not to take [the Company's] deposition, nor did Plaintiff depose anyone else." That is true.  That is also disingenuous.

Miller originally filed this case in the Austin Division. The Court there granted the Company's motion to transfer this case to the Midland-Odessa Division. By doing this, the Company succeeded in putting the Company's HR Director or Manager, Ms. Krista Vera, cited in the Motion at p. 10, and at least one of its two final decision makers in the Company's decision to fire Miller, beyond this Court's subpoena range. *See* Forsman Decl. (Ex. 14) at p. 3. That is because the Company has an office in Cedar Park, and Cedar Park is in Williamson and Travis Counties. Ms. Vera officed there. Further, it appears that the Company no longer employs her.

The other final decision maker identified on page 3 of Forsman Decl. (Ex. 14), Mr. Hank Guillotte, is also beyond this Court's subpoena range. *See* Forsman Decl. (Ex. 14) at ¶ 5 ("Mr. Hank Guillotte … resides in East Texas").

The Motion should be DENIED.

Dated: May 12, 2025

**Plaintiff Miller's Response in Opposition to**                                                                                                    **Page 14**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**

Respectfully submitted,

By: _____*/s/ Wade A. Forsman*_____

**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
903.689.4144 Telephone-East Texas
972.499.4004 Telephone–Dallas/Fort Worth
903.689.7001 Facsimile
wade@forsmanlaw.com

**Attorney for Plaintiff Torey DeVol Miller**

**Certificate of Service**

I certify that on **Monday**, **May 12, 2025**, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Wade A. Forsman*
_____
**Wade A. Forsman**

**Plaintiff Miller's Response in Opposition to**     **Page 15**
**Defendant Thomas Oilfield Services, LLC's Motion for**
**Traditional and No Evidence Summary Judgment**